IN THE CASE OF


UNITED STATES, Appellee


v.


Noel A. PINEDA, Corporal
U.S. Marine Corps, Appellant


No. 99-0915

Crim. App. No. 98-1659

United States Court of Appeals for the Armed Forces

Argued February 29, 2000

Decided January 9, 2001

SULLIVAN, J., delivered the opinion of the Court, in which GIERKE
and EFFRON, JJ., and COX, S.J., joined. CRAWFORD, C.J., filed an
opinion concurring in the result.

## Counsel

For Appellant: Lieutenant Omar R. Lopez, JAGC, USNR (argued).



For Appellee: Lieutenant Kevin S. Rosenberg, JAGC, USNR (argued); Colonel
Kevin M. Sandkuhler, USMC, and Commander Eugene E. Irvin, JAGC, USN (on
brief); Lieutenant Commander Philip Sundel, JAGC, USNR, and Lieutenant
Janice O'Grady, JAGC, USNR.



Military Judge: R. G. Williams


THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE PUBLICATION.

United States v. Pineda, 99-0915/MC

Judge SULLIVAN delivered the opinion of the Court.

On August 28, 1997, appellant was tried by a special court-martial composed of a military judge sitting alone at the Naval Legal Service Office, Middle Atlantic, Norfolk, Virginia.  In accordance with his pleas, he was found guilty of unauthorized absence, nine specifications of making false official statements, forgery, and six specifications of fraud against the United States, in violation of Articles 86, 107, 123, and 132, Uniform Code of Military Justice, 10 USC §§ 886, 907, 923, and 932.  He was sentenced to a bad-conduct discharge, confinement for 4 months, forfeiture of $600 pay per month for 4 months, and reduction to pay grade E-1.  On December 18, 1997, the convening authority acted in this case. [1]  On May 28, 1999, the Court of Criminal Appeals affirmed in an unpublished opinion (No. 98-1659).

We granted review in this case on October 22, 1999, on the following issues:

> I.  WHETHER THE LOWER COURT ERRED IN
> AFFIRMING THE MILITARY JUDGE'S DECISION
> NOT TO INQUIRE INTO APPELLANT'S
> UNDERSTANDING OF THE RAMIFICATIONS OF HIS
> REQUEST FOR A BAD-CONDUCT DISCHARGE.

---

[1] The convening authority's action in this case was unclear regarding whether appellant's bad-conduct discharge was approved. However, an affidavit supplied by the convening authority and made part of the record without appellant's objection makes clear the convening authority's intent to approve the bad-conduct discharge.  Therefore, we are satisfied the bad-conduct discharge was approved.

United States v. Pineda, 99-0915/MC

> II.  WHETHER THE LOWER COURT ERRED IN NOT
> FINDING THAT THE TRIAL DEFENSE COUNSEL'S
> ERROR MATERIALLY PREJUDICED APPELLANT'S
> SUBSTANTIAL RIGHTS WHERE HE ARGUED THAT A
> DISCHARGE WAS APPROPRIATE EVEN THOUGH
> APPELLANT HAD NOT REQUESTED IT.

We hold that defense counsel erred in conceding the appropriateness of a bad-conduct discharge in his sentencing argument without putting in the record that appellant agreed with this argument.  United States v. Dresen, 40 MJ 462, 465 (CMA 1994).  Such error, however, did not materially prejudice appellant's substantial rights.  United States v. Robinson, 25 MJ 43, 44 (CMA 1987).

Appellant was a 19-year-old Marine with one-and-a-half years of military service at the time he began committing the charged offenses.  He engaged in a scheme to secure additional allowances from the United States Government by falsifying various official forms to the effect that he was married.  He maintained this scheme from March of 1995 to January of 1997, and obtained various unauthorized allowances in the approximate amount of $15,000. (Prosecution Exhibit 11).  As a result of these criminal activities, appellant rented and lived in a two-bedroom apartment in the Virginia Beach area.  He was promoted to the rank of corporal (E-4) during the period of these fraudulent activities and borrowed $15,000 from his parents to make restitution.

The Court of Criminal Appeals found the following facts concerning the granted issues:

Appellant obtained a pretrial agreement which allowed his charges to be brought to a special court-martial, in lieu of the Government seeking a referral to a general court-martial.  This was the sole consideration given by the Government in the pretrial agreement.  In return, appellant had to enter pleas of guilty to the charges and specifications and make restitution to the United States in the amount of $15,425.03.  Appellate Exhibit I and Record at 92-95.

During the sentencing portion of the trial, appellant elected to make an unsworn statement.  The relevant portion is as follows:

ICC:  Now, you know what the maximum possible punishment is in this case, <u>and you and I have been frank with each other with regard to the type of discharge you're undoubtedly going to receive, and if this court didn't, the Marine Corps would</u>.  What confinement are you -- do you have any request you want to make of the Judge with regard to confinement?

ACCUSED:  <u>Yes</u> - yes, I do.  I'm - I'm in debt to my to my parents for helping with the -- the restitution, and I'm making every possible effort to -- to pay them back.  They don't make that much money themselves, my mom is a teacher's aid at a school and my dad works at a factory.  My bother [sic] also helps out for expenses.  I got a second job to -- to help them out a little bit more, and whatever happens I'm going to try to make -- make the best of anything, that's -- that's what I always do.

Record at 84.  During argument on sentencing, appellant's counsel made the following comments:

So, <u>I would respectfully submit, Your Honor, that perhaps a bad-conduct discharge, and I don't like asking for one, but I'm practical it's going to happen</u>, and the forfeiture, and I agree the

4

> reduction to pay grade E-1 <u>are</u>
> <u>appropriate in this particular case</u>.
> But I respectfully submit, Your
> Honor, that a period of confinement,
> certainly a lengthy period of
> confinement in his case is -- is
> simply not warranted and I
> respectfully ask in his behalf that
> you not confine him.  Thank you.

> Record at 90.  The military judge did not
> ask appellant any questions regarding his
> understanding of the ramifications of a
> bad-conduct discharge, nor did he ask
> appellant if he authorized his counsel to
> request a punitive discharge on his
> behalf.

Unpub. op. at 2-3 (emphasis added).


The appellate court below found that defense counsel erred.
It said, "In appellant's case, it is clear that his counsel, at a
minimum, conceded the appropriateness of the discharge without
any indication on the record that appellant desired such an
outcome.  This is error.  <u>United States v. Dresen</u>, 40 MJ 462 (CMA
1994)."  <u>Id</u>. at 4.  However, it also found no prejudice.  It
said:


> Prejudice will not be presumed.  We must
> decide if the argument of counsel
> prejudiced appellant's sentence and
> increased appellant's chances of otherwise
> being awarded a bad-conduct discharge.  We
> find that it did not.  Unlike the facts in
> <u>McNally</u>, in which our superior court found
> prejudice at a special court-martial
> because his confinement was already
> limited by the pretrial agreement and the
> nature of the charges were not so serious
> that a discharge was inevitable, <u>we find</u>
> <u>the circumstances surrounding appellant's</u>
> <u>offenses were such that a punitive</u>
> <u>discharge was inevitable</u>.  These were very
> serious charges that were brought to a

> special, vice a general, court-martial
> pursuant to a pretrial agreement.
> Appellant was required to make restitution
> of over $15,000.  The charges and
> specifications of criminal misconduct are
> numerous.  We cannot believe that any
> sentencing authority would not have
> awarded a punitive discharge, no matter
> how elegantly or forcefully defense
> counsel may have argued for retention.

Id. at 4-5 (emphasis added).

___ ___ ___

A punitive separation from the military, either a bad-conduct discharge or a dishonorable discharge, is a severe punishment and has long been recognized as such by this Court.  See United States v. McNally, 16 MJ 32, 33 (CMA 1983), and cases cited therein.  Nevertheless, we have recognized that in certain circumstances a military accused may request such a punishment be imposed by his court-martial.  E.g., United States v. Volmar, 15 MJ 339 (CMA 1983).  Our case law, however, reflects this Court's views that defense counsel not ask for this type of discharge in contravention of an accused's wishes, and that a military judge make appropriate inquiries where an apparent conflict exists between them. [2]  See United States v. Lyons, 36 MJ 425, 427 (CMA 1993).  Moreover, we have held that a defense counsel may not

---

[2]  There is no conflict in the record in this case which required the military judge to stop this trial and interrogate appellant and his defense counsel in this matter.

even concede the appropriateness of a punitive discharge in the face of a silent record.  Id.


     In United States v. Dresen, this Court restated this law concerning defense counsel's arguments for a punitive discharge. We said:

> Of course, an accused has a right to ask the sentencing authority for a particular punishment to the exclusion of other kinds of permissible penalties, and a defense counsel may advocate an accused's wishes in this regard in an effort to effectuate them.  United States v. Weatherford, 19 USCMA 424, 42 CMR 26 (1970).  Counsel may not, however, ask a court-martial to impose a punitive discharge when the accused's wishes are to the contrary. United States v. Robinson, 25 MJ 43 (CMA 1987); United States v. Webb, 5 MJ 406 (CMA 1978); United States v. Weatherford, supra.  Accordingly, when defense counsel does seek a punitive discharge or does concede the appropriateness of such a discharge—even as a tactical step to accomplish mitigation of other elements of a possible sentence—counsel must make a record that such advocacy is pursuant to the accused's wishes.  United States v. Lyons, 36 MJ 425 (CMA 1993); United States v. McNally, 16 MJ 32 (CMA 1983).

40 MJ at 465 (emphasis added).  In the present case, we hold that there was not an adequate record of appellant's desire that a punitive discharge be actually imposed.  Cf. United States v. Lyons, supra at 426 ("I feel that it is in both my interest and the Navy [sic] to discharge me."), and cases cited at 427.

Nevertheless, in United States v. Dresen, supra, we held that the failure to make a proper record of the accused's wishes does not, per se, require an appellate court to set aside a court-martial sentence. Instead, in that case we assessed the impact of that error on the approved sentence to determine whether sufficient prejudice existed for a finding of ineffective assistance of counsel under the second prong of the test in Strickland v. Washington, 466 U.S. 668 (1984). The same inquiry is appropriate in the present case with respect to the adjudged sentence. In particular, where the facts of a given case compel a conclusion that a bad-conduct discharge was reasonably likely, we do not normally order a new sentence hearing. United States v. Volmar, supra at 343.

Turning to the record before us, we note that appellant implicitly acknowledged the reasonable certainty of a punitive discharge in his case when questioned by defense counsel. (R. at 84). His belief in this regard was well justified. He was convicted of numerous offenses (17) involving repeated financial frauds on the United States Government involving a substantial amount of money, approximately $15,000. See United States v. Robinson, supra at 44. Moreover, in his brief military career, he was previously counseled for financial dishonesty (unauthorized use of a government phone), and he committed some of the charged military offenses while a noncommissioned officer. His repeated abuse of government property entrusted to him greatly enhanced his chances of receiving a punitive discharge.

Cf. United States v. Dresen, supra at 465 (special circumstances existed suggesting forceful and persuasive plea for clemency may have been successful). Finally, this was a trial before a military judge alone, and we are confident that this judge was aware that a proper record had not been made and disregarded the improper argument before him. See United States v. Robinson, supra at 44; see also United States v. Raya, 45 MJ 251, 254 (1996). Therefore, appellant has failed to prove that he was prejudiced by his counsel's improper argument. See Strickland v. Washington, supra. In these circumstances, we agree with the appellate court below that a sentence rehearing is not required in this case.

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

United States v. Pineda, No. 99-0915/MC

CRAWFORD, Chief Judge (concurring in the result):

In my judgment, appellant's claim is essentially one of ineffective assistance of counsel. See, e.g., United States v. Pfister, 53 MJ 158, 160 (2000)(Sullivan, J., concurring in the result). While I agree that it would have been preferable for the military judge to inquire on the record whether appellant's civilian counsel was requesting a discharge, and if so, whether appellant concurred in such a request, I find no error based upon the facts of this case.

"Defense counsel is an advocate for the accused, not an amicus to the court." United States v. Volmar, 15 MJ 339, 340 (CMA 1983), citing Ellis v. United States, 356 U.S. 674 (1958). When an accused expresses a desire to stay in the service (whether it be to avoid a punitive discharge or because he wants to continue to serve the nation), the defense counsel errs by conceding the appropriateness of a punitive discharge or telling the court that the accused's conduct warrants such. See United States v. Garcia, 18 USCMA 75, 76, 77, 39 CMR 75, 76, 77 (1968); United States v. Richardson, 18 USCMA 52, 53, 39 CMR 52, 53 (1968); United States v. Holcomb, 20 USCMA 309, 43 CMR 149 (1971); United States v. Webb, 5 MJ 406 (CMA 1978).

While the majority correctly notes that there is no evidence that appellant desired to be discharged, I note that the record is devoid of any evidence to the contrary. Nowhere does appellant express a desire to be retained in the service after his conviction. See United States v. Lyons, 36 MJ 425, 427 (CMA 1993). The record indicates that both appellant and his counsel were resigned to the fact that appellant's days in the Marine Corps were short lived, for the reasons cited by the majority. __ MJ at(8). The evidence of record convinces me that appellant's primary desire was to avoid incarceration so that he could continue to work and repay the $15,000 debt his parents incurred in making the Government whole following appellant's larcenous adventures.

As I stated in United States v. Lee, 52 MJ 51, 53 (1999)(Crawford, J., concurring in the result): "The key to effective advocacy on behalf of one's client ... requires the advocate to do many things ..., including making rational choices based on the unique circumstances of each case...." By conceding the likelihood of appellant's discharge from the Marine Corps, whether that discharge came in the form of a punitive sentence from the military judge, or whether it came administratively after trial, defense counsel was asking the judge to mitigate

2

confinement.  This concession also dovetailed with the defense theory at sentencing -- let this "fallen Marine" return home, remain employed, and repay his debts. Counsel's concession was entirely appropriate in light of the number and nature of the offenses with which his client was charged.  Zealous representation does not equate to making hopeless arguments.  See id. at 54.  Finding no deficiency in counsel's representation under the first prong of Strickland v. Washington, 466 U.S. 668 (1984), I would affirm the findings and sentence in this case.